IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHARLES D. EASLEY, JR.                                                                 PLAINTIFF

V.                                                          CIVIL ACTION NO. 1:18-CV-139-SA-DAS[1]

LOWNDES COUNTY, MISSISSIPPI                                                  DEFENDANT

ORDER AND MEMORANDUM OPINION

Charles D. Easley initiated this action on July 19, 2018 by filing his Complaint [1] against Lowndes County, Mississippi. On May 1, 2020, Lowndes County filed a Motion for Summary Judgment [44]. The Motion [44] has been fully briefed, and the Court is prepared to rule.

*Factual and Procedural History*

This cause of action is the product of three consolidated actions which have largely synonymous fact patterns. The Defendant, Lowndes County, is within Mississippi's 16th Judicial Circuit which, in addition to Lowndes, is comprised of Clay, Noxubee, and Oktibbeha Counties. The Plaintiff, Charles D. Easley, has practiced law for dozens of years. He also served as a Mississippi Supreme Court Justice for several years. After his stint on the bench, Easley moved back to Columbus, Mississippi, which is located in Lowndes County, and reopened his private law practice.

These consolidated cases arise from Easley's application for the Lowndes County public defender position three separate times between 2014 and 2017. Each time, a younger attorney was selected for the job. Each time, Easley filed a charge of discrimination with the EEOC, alleging that he had been discriminated against because of his age. Each charge of discrimination filing

---

[1] This civil action was previously consolidated with two other cases—specifically, N.D. Miss. Cause No. 1:18-cv-140-SA-DAS and N.D. Miss. Cause No. 1:18-cv-223-SA-DAS.

resulted in the EEOC issuing a Notice of Right to Sue, which served as the basis for the original three lawsuits. Easley contends that each of the hiring decisions ran afoul of the ADEA.

The 16th Judicial Circuit has three judges: Judge Lee J. Howard, Judge Lee S. Coleman, and Judge James T. Kitchens. The Mississippi Code specifically sets forth the procedure for appointment of public defenders. In particular, Section 25-32-3 provides that the county or local bar association shall recommend two (2) or more attorneys for the public defender position and the senior judge shall appoint a chief public defender from that list. MISS. CODE ANN. § 23-32-3. Subsequently, the statute provides, if the county board of supervisors authorizes, assistant public defenders will be appointed by the aforementioned chief public defender. *Id.*

There is no dispute that Lowndes County's appointment of its public defenders does not comply with Section 25-32-3. Instead, in Lowndes County, several coequal, part-time or assistant public defenders are appointed. These part-time public defenders are selected from a pool of attorneys known to the Judges, not from a list provided by the Board of Supervisors or the local bar association. Further, although Judge Howard, as the senior circuit judge in a circuit with more than one judge, has the statutory authority to make the decision, the three Judges make the decision in a collaborative effort.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

In addition to arguing that Easley cannot survive summary judgment on the substantive portion of his ADEA claim, Lowndes County contends that it is not the appropriate defendant for Easley's claim because it is not his employer for ADEA purposes. In a previous Order and Memorandum Opinion [21] this Court denied the Defendant's Motion to Dismiss [10][2] because questions of fact remained as to whether an employment relationship existed. However, since that time, discovery has been conducted and the factual development is no longer lacking. The Court will first address that argument and will then turn to the substance of Easley's ADEA claim.

---

[2] The Court treated Defendant's Motion to Dismiss [10] as a Motion for Summary Judgment because matters outside the pleadings were presented into the record. FED. R. CIV. P. 12(d).

*I. Relevant ADEA employer*

The Court must go through a two-step process in determining whether Lowndes County is the employer, and consequentially a proper defendant. *Deal v. State Farm Cty. Mut. Ins. Co. of Texas*, 5 F.3d 117 (5th Cir. 1993). First, the Court must determine whether Lowndes County falls within the statutory definition of "employer" as defined by the ADEA. *Id.* And if so, there must be an employment relationship between the office the Plaintiff sought to hold, and the Defendant. *See id.*

*a. Whether Lowndes County is an Employer as defined by the ADEA*

The issue of whether Lowndes County constitutes an "employer" for ADEA purposes can be resolved rather easily. The ADEA includes political subdivisions within the statutory definition of "employer," specifically providing as follows:

> a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.

29 U.S.C.A. § 630 (b)(2).

Lowndes County is a political subdivision of the State of Mississippi. *See* MISS. CODE. ANN. § 11-46-1(i) ("Political subdivision means any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any county[.]"). The Defendant does not contest this point. Consequently, the Court finds that Lowndes County is an employer for purposes of the ADEA, and the first prong of the test is satisfied. *See Deal*, 5 F.3d at 117.

*b. Whether an Employer/Employee Relationship Exists*

In determining whether an employment relationship exists, courts across the country have utilized various tests. *See Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985) (explaining

4

different tests are applied by various courts in this context). However, the Fifth Circuit applies a "common law control/hybrid economic realities" test when ascertaining whether an employer/employee relationship exists for ADEA purposes. *See Pequeño v. Univ. of Texas at Brownsville*, 718 F. App'x 237, 242 (5th Cir. 2018) (citing *Deal* 5 F.3d at 118). The most important component of the test is the common law control aspect. *Deal*, 5 F.3d at 119. In fact, the Fifth Circuit has specifically instructed that courts should place emphasis on the common law control portion of the test over the economic realities portion. *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013) (citing *Diggs v. Harris Hosp.--Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988)). Under the common law control prong, the Court should look to things like hiring and firing, the right to supervise the purported employee, and the right to set the employee's work schedule. *Deal*, 5 F.3d at 119. The economic realities component, which also must be considered "focuses on who pays, withholds taxes from, provides benefits to, and sets other terms and conditions of employment for, the employee." *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 325 (5th Cir. 2016) (citing *Deal*, 5 F.3d 119).

In addition to the above-referenced considerations, the Fifth Circuit has also acknowledged that the following factors are relevant to the inquiry of establishing whether an employer/employee relationship exists:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated [,] i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"[,] (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Juino*, 717 F.3d at 434–35.

However, the Court notes that, the Fifth Circuit has only enumerated these factors in this manner on a handful of occasions. *See*, *e.g.*, *Juino*, 717 F.3d at 434-35; *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 228 (5th Cir. 2004); *Bloom v. Bexar Cty., Tex.*, 130 F.3d 722, 726 (5th Cir. 1997); *Nowlin v. Resolution Tr. Corp.*, 33 F.3d 498, 506 (5th Cir. 1994); *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1020 (5th Cir. 1990); *Diggs*, 847 F.2d at 270; *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986). Thus, the vast majority of analyses in this Circuit that seek to ascertain an employer/employee relationship do not treat these factors as an all-encompassing, exhaustive list. Recognizing this fact, the Court will discuss these factors throughout the analysis, to the extent that they are applicable.

The Court will first turn to the common law control prong of the analysis and then turn to the economic realities component.

*i. Common Law Control Prong*

In analyzing the common law control prong, the Court looks to who has the right to hire and fire the public defenders, the right to supervise the public defenders, and the right to set their work schedules. *Deal*, 5 F.3d at 119.

First, the level of supervision of the public defenders is relatively minimal. Although the Judges can demand that a lackadaisical public defender go see his clients in jail,[3] the Lowndes County Board of Supervisors plays no active role in supervising how defense of indigent defendants is rendered. There is obviously a great deal of work and preparation that is conducted independently by the public defenders. It follows that the Lowndes County Board of Supervisors

---

[3] Judge Kitchens testified to this point in his deposition, specifically stating "I mean, we can demand that they go see their clients in the jail…" Deposition of Judge James T. Kitchens, [44], Exh. 3, p. 3.

does not set the work schedule for them. Once appointed, it is intuitive and apparent from the evidence in the record, that the public defenders exercise almost full autonomy in how they execute the job.

Next, it is undisputed that, by operation of state law,[4] the right to hire/appoint the public defenders is vested in the senior circuit court judge in circuits with more than one judge. However, in the 16th Judicial Circuit, all three Judges give input in deciding who will serve as part time public defenders.[5] While in the 16th Circuit, the Judges make the final decision in appointing the public defenders, the relevant statute is clear that the county or local county bar association is supposed to first procure a list of who the Judges may appoint.

Concerning the right to hire and fire, the Judges' ability to terminate is evidenced twofold. First, the fact that they had the power to make public defenders' appointments last only one year. The public defenders' renewal, or lack thereof, is based on their performance. Second, the Judges may terminate a public defender before their term is up. Judge Howard testified as follows regarding that issue:

> Q. Do you have the ability to terminate public defenders?
> A. Yes.
> Q. And I'm not talking about just not reappointing them. Say today you don't like a public defender, your position is, I can terminate that person's—
> A. If there's good cause.
> Q. But if you think there's good cause it's your position that you could do that?
> A. **I have done it.**

Deposition of Judge Lee J. Howard, [44], Exh. 2, p. 4 (emphasis added).

---

[4] The applicable statute on this issue, which the Court cited above, is Mississippi Code Section 23-32-3, which provides in pertinent part that "the circuit judge or the senior circuit judge, if there be more than one (1) circuit judge, shall appoint a practicing attorney to serve the county or counties as public defender[.]" MISS. CODE ANN. § 25-32-3.

[5] As to this issue, Judge Kitchens testified that "Judge Howard is the senior judge in the district. And I mean, I guess by all rights he could just say, I'm going to appoint them…He's always been real good about it. And usually at some point, you know, the three of us will maybe not even all sit together. He'll say, What do you think about A, B, C, D, E and F?" Deposition of Judge James T. Kitchens, [44], Exh. 3, p. 4.

Conversely, the Plaintiff states that the best example of County control is that it "has the sole discretion in terminating a public defender. Miss. Code Ann. § 25-32-15." [49]. However, the cited statute does not give the County the right to terminate an individual public defender. The statute, in relevant part, provides that "[t]he office of public defender may be terminated, in the discretion of the board of supervisors." MISS. CODE. ANN. § 25-32-15. Thus, in reviewing the plain language of the statute, it does not necessarily grant the Board of Supervisors authority to terminate a particular public defender, but instead, to terminate the position as a whole.

Although recognizing its non-binding effect, the Court also notes an Advisory Opinion issued by the Office of the Mississippi Attorney General regarding this topic. Office of the Attorney General, State of Mississippi, Opinion No. 2007-00363, WL 3356833, at *1 (Miss. A.G. Sept. 4, 2007). There, the Attorney General, interpreting Section 25-32-15, advised that the statute gives counties the authority to abolish the office, not to fire an individual public defender. *Id.*

Another control factor the Court may consider is considering who furnishes the equipment necessary for the job. *See Broussard*, 789 F.2d at 1160 ("[E]vidence of control over a job includes ownership of equipment necessary to its performance, responsibility for costs associated with operating that equipment[.]"). Lowndes County, by operation of state law, must furnish and fund the equipment necessary for the public defenders' office. MISS. CODE. ANN. § 25-32-1 (stating that the Board of Supervisors should provide office space, personnel and funding for the office, and to perform any and all functions necessary for the efficient operation of the public defenders office); MISS. CODE. ANN. § 25-32-7 (stating the county will pay to provide the public defender with office space, secretarial assistance, and all reasonable expenses of operating the office). These authorities certainly weigh in favor of County control.

8

*ii. Economic Realities Prong*

In considering to the economic realities portion of the test, the Court looks to who in the arrangement pays the salaries, withholds the taxes, provides the benefits, and sets other terms and conditions of employment. *U.S. ex rel. Bias*, 816 F.3d at 325 (citing *Deal*, 5 F.3d 119). Here, it is undisputed that Lowndes County pays the salaries of the public defenders and therefore, by default, withholds the mandated federal and state income and social security taxes. This is evidenced by the letter in the record that Judge Kitchens sent to the payroll clerk of Lowndes County when hiring a public defender. [44], Exh. 1, p. 1. Judge Howard also testified to this point that "We don't set the salaries…The counties – the boards do that." Deposition of Judge Lee J. Howard, [44], Exh. 2, p. 4.

Turning to benefits, Lowndes County public defenders' retirement benefits are paid by the Public Employees' Retirement System of Mississippi ("PERS"), a state-administered benefits retirement program available to employees of public entities such as, but not limited to, public schools, universities, community colleges, municipalities, counties, the Legislature, and highway patrol. The public defenders' access to PERS benefits is a direct result of the Lowndes County payroll agent naming them as "members" of the program on the PERS forms. The medical, dental, vision, and life insurance available to Lowndes County employees is also available to the public defenders. All relevant insurance forms list Lowndes County Board of Supervisors as the "employer." Similarly, anywhere that prompts for "employee name" or "employee signature", an incumbent public defender's name is listed.

*c. Conclusion as to the Relevant Employer*

As noted above, it is abundantly clear that the County is an employer for ADEA purposes. Concerning whether there is an employer/employee relationship between Lowndes County and its public defenders, the Court is guided, as addressed above, by a multitude of considerations.

Although not as important as the common law control factors, the economic realities factors weigh exclusively in favor of Easley's argument that an employment nexus exists between Lowndes County and its public defenders. In considering the common law control portion of the test, the Court notes that while the Judges are able to hire and fire the public defenders, Lowndes County pursuant to the applicable statute, has a considerable amount of authority in this regard, having been charged with procuring a list of potential candidates. Additionally, the Court again emphasizes that the County maintains the ability to abolish the office altogether. Furthermore, the County furnishes and funds the equipment necessary for the functioning of the office, which goes toward County control. Lastly, while cognizant of the County's argument that it plays no active role in the supervision or schedule setting of its public defenders, the Court finds that this factor is not as critical in this case due to the nature of the work of a public defender, which by its very nature largely requires independent judgment by the individual occupying the position.

Taking all of these factors into account, the Court finds that Lowndes County is the appropriate defendant in this case.[6] The County's request for summary judgment on that issue is therefore denied.

*II. Age Discrimination Claim*

Having found that Lowndes County is the relevant employer, the Court now turns to the substance of Easley's claims.

---

[6] The Defendant contends that any bad motives of Lowndes County cannot be imputed to the Judges. However, the Court finds that the County cannot avoid liability simply because they have delegated the entirety of the public defender appointing mechanism in defiance of the statute. The Defendant argues that the County "merely follows the statutory authorized part-time system in place there for generations." [45]. However, in actuality, that assertion is not entirely accurate. While the system may have been in place there for generations, the statute requires the County or regional bar association to procure a list of potential appointees for the Judges to choose from. MISS. CODE. ANN. § 25-32-3. Lowndes County fails to do this.

*a. Burden Shifting Standard*

The Age Discrimination in Employment Act provides that "[i]t shall be unlawful for an employer…to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

In an ADEA claim based on circumstantial evidence, as is the case here, the Court must apply the familiar burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005). Under the tripartite framework of *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discriminatory treatment based on age. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). To establish the *prima facie* case under an ADEA claim, the Plaintiff must show (1) they are within the protected class being at least forty years old; (2) they are qualified for the position; (3) they suffered an adverse employment decision; and (4) they were replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class). *Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013) (citations omitted) (internal quotations omitted). If the Plaintiff does so, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist*, 500 F.3d at 349. Lastly, if and when the employer proffers evidence of a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff "to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010)). Critically, at the summary judgment stage, the Court's duty is not to ultimately determine whether Easley has

11

proven or established that the County's articulated reasons for the employment decisions are pretextual but, rather, only whether he has produced sufficient evidence to create a genuine issue of material fact as to whether those reasons are pretextual. *See Jackson*, 602 F.3d at 378; *see also Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 203 (5th Cir. 2008) (holding that "[w]hile the ultimate burden of proving discrimination remains with the plaintiff throughout the case, within the context of a summary judgment motion, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.") (citation omitted) (internal quotations omitted).

### b. Burden Shifting Analysis

There is no real dispute that Easley has established a *prima facie* case, as he (1) is in the protected class being over forty years of age; (2) met the qualifications for the position; (3) suffered an adverse employment decision in not being selected for the position; and (4) the position was awarded to younger attorneys. *See Leal*, 731 F.3d at 410–11. Once Easley established the *prima facie* case, the burden then shifted to the Defendant to proffer legitimate, non-discriminatory reasons for its hiring decisions. The Defendant summarizes these reasons based on the deposition testimony of the Judges: (1) Easley had an ulterior motive that being appointed to the position could give him the requisite amount of years in public service to obtain PERS benefits; (2) Easley has been dilatory in his previous dealings with the court; (3) Easley has too busy of a private practice; and (4) Easley has been difficult to get along with during his long career (even allegedly challenging Judge Kitchens to a fight while on opposite sides of a criminal proceeding).[7] The Court finds that these stated reasons are sufficient to satisfy the Defendant's burden at this stage in the

---

[7] In his deposition, Judge Kitchens testified that "I didn't agree with him on that and he and I got aggravated at each other and, you know, he asked me to fight him right downstairs[.]" Deposition of Judge James T. Kitchens, [44], Exh. 3, p. 9.

proceedings. Thus, the contested issues arise under the pretext stage of the analysis. The burden, for purposes of this Motion [44], now shifts back to Easley to come forward with sufficient evidence to create a genuine issue of fact as to whether the reasons given are pretextual. *See Jackson*, 602 F.3d at 378.

Easley makes several arguments that the reasons are pretextual, and the Court will address each argument in turn.

### i. Failure to interview

Easley's first contention of pretext is that the Judges did not interview him for the position. To support this assertion, he cites *Stennett v. Tupelo Public School District*, 619 F. App'x 310 (5th Cir. 2015), wherein the Fifth Circuit held that "an employer's failure to interview a candidate can help carry [plaintiff's] burden of proving pretext." *Id.* at 320. (internal quotes omitted). The operative phrase in *Stennett* is that a failure to interview "*can help* carry [plaintiff's] burden of proving pretext" *Id.* (emphasis added).

In *Stennett*, the plaintiff was denied an interview for five of seven jobs that she applied for in the Tupelo Public School District after initially being laid off due to an operational restructuring. 619 F. App'x at 319. The plaintiff's qualifications were clearly superior to the younger candidates interviewed and selected. *Id.* All of this while there appeared to potentially be a systemic pattern of not retaining older employees during the operational restructuring. *Id.* at 322-23. The culmination of facts in that case, from a circumstantial evidence standpoint, were enough to raise a genuine issue of fact as to whether there was pretext. *Id.* at 323. The Fifth Circuit reasoned that based on the plaintiff's "exemplary qualifications, pertinent experience, and excellent performance reviews, a reasonable juror could find it suspect that she would not even be provided the opportunity to interview for the vast majority of the positions." *Id.* at 320.

13

Here, the facts are distinguishable. It is true Easley has applied for the position three times and never received an interview. However, in the Court's view, one of the key facts of this case is the informal nature of the interview process. It is clear from the record that attorneys who are known quantities before these Judges often do not receive interviews, regardless of age. This fact was testified to by Judge Howard:

> Q. When you make the selection to hire new public defenders do you or the other judges interview them?
> A. Again, if we know the lawyer, not necessarily so. But usually, yes.
>
> …
>
> Q. Do you regularly interview candidates for the position when you're talking about adding new people?
> A. If there are new people. If I don't know them or I hadn't seen them in court or anything like that, yes. We pretty much interview them. If I've known somebody who's practiced for a long, long time, I know them.
> Q. Okay.
> A. I don't need them to give me anything in writing or anything like that if I'm known them for that period of time.

Deposition of Judge Lee J. Howard, [44], Exh. 2, p. 5, 8.

Judge Kitchens also testified on this issue:

> Q. With regard to public defenders, when you're bringing on a new one – do you normally interview them?
> A. Usually by the time that we appoint somebody – the answer is, No.

Deposition of Judge James T. Kitchens, [44], Exh. 3, p. 3.

To that point, Easley testified at his deposition that he was a very well-known quantity in the legal community of the 16th Judicial Circuit:

> …Circuit Judges have observed me in court for better than 35 years. And I've tried cases against Judge Kitchens when he was assistant DA. He knows my abilities. Lee Howard has seen my abilities. I tried a case a year ago, a little over a year ago in front of Judge Coleman, Lee Coleman. They know my abilities.

Deposition of Charles D. Easley, [44], Exh. 4, p. 4.

Unlike in *Stennett*, where the Fifth Circuit held that a jury could find it suspect that no interview was conducted for the plaintiff with exemplary qualifications and excellent performance reviews, here, considering the hiring decision in context, the Court finds that no such inference can be drawn.

The Fifth Circuit has made clear that "the failure to interview, standing alone, gives rise to no entitlement to recover." *Wheeler v. City of Columbus, Miss.*, 686 F.2d 1144, 1153 (5th Cir. 1982). Further, even if the Judges intentionally did not interview Easley, he provides nothing substantive to show that the failure to do so establishes pretext for age discrimination. *McDaniel v. Nat'l R.R. Passenger Corp.*, 705 F. App'x 240, 250 (5th Cir. 2017) (holding "[e]ven if [the hiring manager] intentionally left [the plaintiff] off the interview list, [the plaintiff] provides no reason to believe that it was for discriminatory purposes."). Easley proffers the mere fact he was not interviewed and then attempts to reconcile it with the fact that younger applicants were interviewed to conclude that a genuine issue of pretext exists. However, remaining cognizant of the Fifth Circuit's holding in *Stennett*, and considering the totality of circumstances in this case, the Court finds that the lack of an interview here is insufficient to establish pretext. There is no evidence, direct or circumstantial, that shows a nexus between the failure to interview and the younger ages of other applicants.

### ii. Disparity in qualifications

The Plaintiff next contends that the younger candidates who were hired were less qualified. The Plaintiff even states that Judge Coleman "was clearly more interested in hiring substantially younger and less qualified applicants." [49], p. 13. In viewing the evidence in the light most favorably to Easley, the Court will address the attorneys cited by the Plaintiff that were outside of Easley's protected class but were interviewed and ultimately selected.

There are times when a disparity in qualifications is so great that it could help raise a genuine issue of fact relevant to pretext. *See Stennett*, 619 F. App'x at 319. For the disparity in qualifications to be probative, Easley must present evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999). "[U]nless the qualifications are so widely disparate that no reasonable employer would have made the same decision," *id.*, any "differences in qualifications are generally not probative evidence of discrimination[.]" *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001). The bar is set high for this kind of evidence. *Id.*; *see also McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459 (5th Cir. 2019); *see also Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 529 (5th Cir. 2014).

In further exploring the jurisprudence on this issue, the Court is guided by the holding from *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). There, the plaintiff provided an affidavit stating, in conclusory fashion, that younger, less qualified employees were retained over him and that one employee was "in her twenties and had no actual experience in [the respective industry] prior to her employment with Defendant." *Id.* However, an "attempt to equate years served with superior qualifications…[is] unpersuasive." *Nichols*, 81 F.3d at 42 (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993)); *see also Moss*, 610 F.3d 917, 923 (5th Cir. 2010). The determination of who is more qualified is sometimes subjective and work experience is one component of that. *See Nichols,* 81 F.3d at 42. "However, *Bodenheimer*, mandates that greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." *Nichols,* 81 F.3d at 42.

16

The Court acknowledges that a genuine issue of material fact exists when the evidence shows the plaintiff was clearly more qualified than the younger applicants. *See McMichael*, 934 F.3d at 459 (citing *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992)) (citation omitted). Notwithstanding, "[t]o carry this heavy burden," the same standard as previously discussed applies and mandates that the "plaintiff must show that the qualifications are so widely disparate that no reasonable employer would have made the same decision." *McMichael*, 934 F.3d at 459 (citing *Moss*, 610 F.3d at 923) (citation omitted) (internal quotes omitted).

The testimony of Judge Kitchens paints a clear picture of what type of inherent qualifications an applicant should have for the public defender position in addition to being an attorney:

> You've got to remember, it's not just your ability to be in a courtroom, **it's also how well you get along with others**…So you want somebody who can try a case but you also want somebody who will take care of their workload and get along with the clients and with others. You don't want – **you don't want conflict up here all the time.**

Deposition of Judge James T. Kitchens, [44], Exh. 3, p. 5 (emphasis added).

Here, Easley indisputably has more experience than the younger applicants who were hired. He ran a law practice for several years and served on the Mississippi Supreme Court. However, the Judges' testimony is clear that qualifications are not the only attribute that a successful applicant should possess for the public defender position according to the Judges' hiring criteria.[8] Greater experience does not necessarily raise an issue of fact that one candidate is clearly better qualified than another in this case. *See Nichols,* 81 F.3d at 42.

---

[8] "[T]he mere fact that an employer may use subjective hiring criteria is not sufficient evidence of pretext." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003) (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002).

Taking all of this into account, the Court concludes that the disparity in qualifications is not "so widely disparate that no reasonable employer would have made the same decision." *Deines*, 164 F.3d at 282. It follows that Easley has not shown that he was clearly better qualified. Even viewing the disparity in qualifications from this case in a light most favorable to Easley, it is not outside the realm of possibility that a rational person, exercising impartial judgement, in the Judges' position would not have come to the same conclusions. Thus, no genuine issue of fact is raised as to pretext because of a disparity in qualifications.

   *iii. Generally disputing the Judges' reasons*

Easley next asserts that he can show pretext because he disputes all three Judges' explanations/reasons. More specifically, Easley argues that he had only a small practice with office hours four days a week. The underlying contention here is that the Judges' articulated reason that Easley's private practice was too busy to assume this role was pretextual for having an interest in hiring substantially younger, less qualified candidates. Easley contends that the Judges should have consulted with him to address concerns about his private practice's case load. However, even viewing this contention in the light most favorable to Easley, it contradicts the damaging testimony Easley gave at his own deposition, where he testified as follows:

   I do a lot of divorces. Women like me in divorces because I'm aggressive.

   …

   I'm a popular lawyer.

   …

   I can do the work of three lawyers. I'm a workaholic. I work. You can go by my office at night. I'm there until 7:00 or 8:00 o'clock at night.

   …

   I have a heavy case load. I told you I'm in big demand.

18

…

And what's the bottom line? I win. I win more cases than anybody in this county.
I win more cases than anybody in this circuit district.

Deposition of Charles D. Easley, [44], Exh. 4, p. 7-16.

Thus, Easley, by his own admission, serves as counsel in a large number of cases and has a large number of clients. He specifically testified that his private practice consumes large quantities of his time. In the Court's view, Easley's own testimony directly contradicts his pretext argument on this point.

Next, Easley contends that the Judges' general consensus that he has a dilatory tendency is pretextual as he was not late for court and did not ask for excessive deadline extensions. However, the record indicates that in just 24 felony criminal appearances in Lowndes County, 46 motions for continuance were filed in a relatively short span between 2012 and 2019. Deposition of Charles D. Easley, Jr., [44], Exh. 4, p. 7. When asked about whether those motions for continuance were excessive, Easley was of the opinion that they were not. Deposition of Charles D. Easley, Jr., [44], Exh. 4, p. 8. Judge Howard further testified to his experience with Easley in his dealings with the Court:

Q. …With Mr. Easley did you ever have any problems with him not showing up to court or missing a deadline or something?
A. Yes, I think so.
Q. And what kind of situations would you have?
A. Not being in court on time. Continuing cases. That's the dilatory part. That would be the only thing that I – usually – usually I was in court somewhere else. I'm sick. Whatever. And…
Q. …Are those valid excuses for a continuance?
A. They are…They just come a week late.

Deposition of Judge Lee J. Howard, [44], Exh. 2, p. 8.

Judge Coleman also testified that he had personally experienced Easley being dilatory while appearing in his Court:

19

Q. Has there been any issues with Mr. Easley with regard to asking for extensions on cases?
A. Yes
Q. Was that ever a concern with regard go [sic] not selecting him as a public defender
A. To my knowledge, that was never expressed at any meeting or anything like that. It was part and parcel of the concern that I had that he didn't have sufficient time available to devote to the job. The last case that Mr. Easley tried in my courtroom we had either three or four extensions on it. And it had to be tried.

Deposition of Judge Lee S. Coleman, [44], Exh. 1, p. 5.

When asked about specific instances of asking for continuances at his deposition, Easley does not dispute the number of continuances that Defendant's counsel found on the dockets. He only contends that the undisputed number of continuances is not excessive. However, even taking Easley's contention in the light most favorable to him, the Judges' testimony about his dilatory tendencies is corroborated by the several motions and orders for continuance in the record. [44], Exh. 3, p. 12-42. Additionally, the continuances in the record do not even cover the extent of continuances that Easley admitted to at his deposition. Of the continuances in the record, there are several for each of just two cases, all the while during the time period when Easley sought to be appointed to the public defender position. The evidence before the Court undercuts any argument for pretext on this issue.

Lastly, the Plaintiff claims that the County's stated reason that Easley only wanted the position so that he could obtain PERS benefits is pretextual. Easley denies ever having a conversation with Judge Howard about his PERS benefits. He also rebuts ever having challenged Judge Kitchens to a fight or being difficult with others in the legal community. The Court must "review the record as a whole" at the summary judgment stage in evaluating whether evidence supports a finding of pretext. *Stennett*, 619 F. App'x at 316. In doing so, in a light most favorable

to Easley, the inquiry becomes whether if taken as true, those rebuttals would be enough to raise a genuine issue of fact relevant to pretext when factored into the totality of evidence.

In reviewing the deposition testimony, the Judges' general consensus was that they want attorneys for the public defender position who get along with others in the criminal justice system, have the time to devote to the job, and will be prompt. Deposition of Judge Lee S. Coleman, [44], Exh. 1, p. 4; Deposition of Judge Lee J. Howard, [44], Exh. 2, p. 3; Deposition of Judge James T. Kitchens, [44], Exh. 3, p. 5. In the Judges' view, Easley did not possess these qualities. Even if the alleged conversation about PERS or the alleged altercation with Judge Kitchens had never taken place, the culmination of evidence in this case does not leave a genuine issue of fact as to pretext. There has been no showing that the failure to interview was for discriminatory purposes. The disparity in qualifications did not rise to the level of raising a genuine issue of fact. The dilatory tendencies and busy practice of Easley is corroborated by the evidence and his own deposition testimony, respectively. Like the court in *Stennett*, where the Fifth Circuit held that the evidence as a whole should be considered in determining whether a genuine issue as to pretext existed, here, the Court adopts the same approach. The totality of evidence and circumstances in this case is not sufficient to support a reasonable jury's finding that Easley was discriminated against on the basis of his age.

The Court also feels compelled to note Easley's deposition testimony, wherein he stated the following:

> Q. …you've served on the state supreme court, sir, and you know the difference between inadmissible hearsay, speculation, conjecture. I'm talking about physical documents. I'm talking about witnesses with first-hand knowledge. **Do you have any evidence other than your feeling about your being more qualified and being the best lawyer that you can bring forward for the court as to why there is a jury issue as to someone else being selected but for your age?**
> A. **Not at this time.** I'm sure when we do these depositions you'll see. But, no, I don't have any other written documents. **Just the hearsay I've heard.**

21

Deposition of Charles D. Easley, [44], Exh. 4, p. 17 (emphasis added).

The ADEA does not preclude an employer from making a bad hiring decision, only a discriminatory one. *Cramer v. NEC Corp. of Am.*, 496 F. App'x 461, 467 (5th Cir. 2012). The plaintiff must show that his age was the but for cause of the adverse employment action in an ADEA claim; proving that age was a motivating factor for the decision is not enough. *McMichael*, 934 F.3d at 455 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (internal quotes omitted). While Easley may feel that he is the most qualified lawyer available for the job, by his own admission, he has no admissible evidence other than hearsay that shows there is a jury issue as to why someone else was selected but for his age.[9] It is merely a conclusory allegation and is not corroborated by documents or witnesses with first-hand knowledge. Easley does not proffer evidence that suggests age was even a motivating factor in him not being hired, let alone the but for cause.

The Defendant has proffered legitimate, nondiscriminatory reasons for not hiring the Plaintiff. Although the Court must view the evidence in a light most favorable to Easley at the summary judgement stage, the ultimate burden remains on him to come forward with evidence that shows that a genuine issue of fact remains for a jury. Taken as a whole and in the light most favorable to Easley, applying the *McDonnell Douglas* framework, he has failed to carry his burden of proof. The key inquiry at the pretext stage of a summary judgement analysis is whether the plaintiff has created a genuine dispute as to whether the legitimate reasons offered by the defendant were not its true reasons. *Campbell v. Zayo Grp., L.L.C.*, 656 F. App'x 711, 716 (5th Cir. 2016) (citation omitted) (internal quotes omitted). Based on the evidence, age played no role in the

---

[9] While the Court notes Easley's admission on this point, its decision does not rely solely upon that admission. Instead, the Court considers it in summation with the applicable analytical framework addressed in detail above.

Judges' hiring decision. Conclusory assertions and Easley's subjective belief are not sufficient to withstand summary judgment. *See id.* Easley has not shown that a genuine issue of fact remains as to whether the Judges' nondiscriminatory reasons for failing to hire him were pretext for age discrimination.

### Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [44] is GRANTED. This CASE is CLOSED.

SO ORDERED, this the 8th day of February, 2021.

/s/ Sharion Aycock_____
UNITED STATES DISTRICT JUDGE